ALBION MALLEABLE IRON CO. *v.* FIRST NATIONAL BANK
OF ALBION.

1. Equity—Dismissal of Bill Without Proofs.

Complainants filed a bill to obtain a construction of certain instruments whereby the property of their debtor became vested in one of the defendants as trustee for creditors, certain of whom were preferred. The bill prayed that the instruments be decreed to amount to a common-law assignment and the preferences be declared void, that the trustee render an account as to his doings, which were alleged to have been fraudulent, and that a receiver be appointed to take charge of the property. Before any proofs were taken, the court, upon the hearing of a motion for an injunction and a receiver, entered a decree dismissing the bill, based upon a finding that the instruments were merely securities, and could not be construed as a common-law assignment. *Held*, that the court was in error, as complainants were entitled to be heard, in any event, upon the question of the fraud of the trustee.

2. Same—Appeal—Receiver.

Where a bill of complaint was dismissed, without the taking of proofs, under a misapprehension of the rights of the parties, and the property in controversy was already in the hands of a receiver, and all charges of fraud were denied by the answer, the appellate court, upon reversing and remanding the cause, refused to pass upon the matter of the appointment of a new receiver, but left the same for determination by the lower court.

Appeal from Calhoun; Smith, J. Submitted January 26, 1898. Decided March 15, 1898.

Bill by the Albion Malleable Iron Company and others, as creditors of the Elms Buggy Company, against the First National Bank of Albion, Henry M. Dearing, and others, for the construction of certain instruments whereby the property of the debtor became vested in defendant Dearing as trustee, and for an accounting. From a decree dismissing the bill, complainants appeal. Reversed.

The bill in this case is filed by a number of creditors of the Elms Buggy Company of Albion, Mich., whose claims aggregate in amount about $15,538, for and in their own behalf and in behalf of such others of the creditors of said Elms Buggy Company as might wish to come in under said bill. The substance of said bill, so far as necessary to state it herein, is as follows:

(1) The Elms Buggy Company is a manufacturing corporation formed under the laws of the State of Michigan, and engaged in the manufacturing and selling of buggies. And it continued in business until May 22, 1896, when it had on hand property of various kinds of the value of about $100,000.

(2) At the date last mentioned, the Elms Buggy Company was indebted to complainants for goods and material put into its manufactory in about the aggregate sum of nearly $16,000, all of which is now due, but a considerable part of which was not due at the date before mentioned.

(3) The Elms Buggy Company purported to have a paid-up capital of $45,000, and so continued to state in its annual reports, and complainants believed that such was the case during the time and all the time until after said 22d day of May, 1896, and dealt with said company relying upon the supposed truth of that statement. They have recently discovered that, instead of said company having had $45,000 of actual cash capital, as a matter of fact said $45,000 was made up largely of the old Albion Manufacturing Company's plant, which consisted of some old sheds, engine, boiler, and shafting of insignificant value, and the balance of the capital was $7,500 which was borrowed by the stockholders of the First National Bank of Albion, and their stock put up as collateral to secure its payment; and, aside from said $7,500 borrowed, the capital put in did not exceed $10,000.

(4) The First National Bank, defendant herein, has been, ever since the organization of the Elms Buggy Company, the financial agent of said company, and to a certain extent has had charge of the financial part of its business; and while the Elms Buggy Company had been holding out to complainants that it had a paid-up capital of $45,000 which had been paid for in cash or its equivalent, the said bank all of said time knew that said buggy company had not received from its $45,000 of stock to exceed $10,000.

(5) On May 22, 1896, said buggy company was indebted to others besides complainants, aggregating, including complainants' claims, the sum of $34,000, all for goods and material bought by said company, the greater part in January, February, March, and April, 1896, and much of said indebtedness was not due on May 22d aforesaid; and said corporation was also at the last-mentioned date indebted to Maria C. Blanchard for $1,600 and to Lucina Sheldon for $3,400, as they believe.

(6) On May 22, 1896, the First National Bank pretended that said buggy company was indebted to it in the sum of $41,000 direct indebtedness, besides a large amount of contingent indebtedness arising on indorsed paper (the amount complainants being unable to state), and the defendant the Commercial & Savings Bank claimed said buggy company was indebted to it $5,000 on a note.

(7) On said 22d day of May, 1896, said buggy company pretended to be unable to pay its debts in full, and, for the purpose of disposing of its property, and distributing the same among its creditors, executed and delivered to defendant Henry M. Dearing a general assignment for the benefit of all its creditors, said assignment being embraced in two instruments, copies of which are annexed to the bill.

(8) As advised and believed, complainants say the making of said assignment was brought about by said First National Bank, and that said buggy company was no more insolvent then than in September, 1895, before any of said $34,000 of goods were bought, and the First National Bank knew this; and that it was understood between the Elms Buggy Company and the First National Bank that the former should buy largely, and, after said goods had been put in, then the company should put the bank in a position of priority of claim as against the persons from whom said goods were bought; and that the making of said assignment was to carry out the above-mentioned design, and to give said bank a priority of claim on said goods above that of the persons from whom they were bought; and that said Dearing was made trustee or assignee in said written assignment in order to carry out the scheme, he being the cashier of said bank.

(9) Immediately after making said assignment, Dearing took possession of the property covered by it, began to sell the same, and run the business of said buggy company, and has since so continued. It was not the intent of said

buggy company, when said instrument was made, to redeem from it, or to pay the debts mentioned in it, but it was always its intention that Dearing should run it to pay up debts; and, the next day after said assignment was made, the manager of the company hired out to said Dearing to assist him in running the business, and the said company carried out its intent to have all of said property sold to pay its debts, and both it and said Dearing construed said instrument as an assignment.

(10) Said First National Bank and the Commercial & Savings Bank now pretend said instrument is a chattel mortgage, and that they and said Blanchard and Sheldon are entitled to priority over complainants and the other creditors representing $34,000 of claims. But complainants allege that because of the provision put into said instrument by which Dearing was given the absolute right to dispose of said property at either public or private sale, as, in his judgment, he saw fit, and because said Elms Buggy Company never intended to pay said debts or redeem said property, and because of the construction put on it by the parties, the said instrument was a common-law assignment, and the alleged preferences contained in it are void under the statutes of the State of Michigan.

(11) Of the $41,000 mentioned in said instrument as owing said First National Bank, complainants are advised that only $15,000 is legitimately the debt of the buggy company, and all above that is on notes on which the buggy company is only indorser, and is not its indebtedness, and not within its power to become surety on it.

(12) The First National Bank and Dearing well knew, while the Elms Buggy Company was purchasing of complainants, that such purchases were being made, and property changed by painting, etc., so that complainants could not replevy, and, if they got the property back, it would be worthless to them in its changed condition, and they knew that complainants equitably should have a lien on said property prior to said bank, and they permitted and advised said Elms Buggy Company to purchase and get said property in its factory for the purpose of obtaining a lien thereon ahead of complainants.

(13) Said Dearing has not properly carried out his trust. He has not disposed of said property, and applied the proceeds thereof to the debts of said corporation. He has collected $26,000, the greater part of which he has paid to the First National Bank, and has paid no other creditors of said Elms Buggy Company, except $1,600, which he claims

to have paid Blanchard, and $600 to the Gale Manufacturing Company, which was one of the $34,000 creditors mentioned in said assignment. He has given, or pretended to give, security on some of the Elms Buggy Company property to the Commercial & Savings Bank of Albion to secure a large amount of alleged indebtedness claimed by it against said buggy company, but which was not, in fact, a legitimate indebtedness, and such security was given for the purpose of giving said Commercial & Savings Bank priority over complainants.

(14) Said Dearing, the First National Bank, and the Commercial & Savings Bank have combined together for the purpose of barring out complainants' claims and the claims of other creditors, amounting to $34,000 aforesaid. Dearing has had placed in his hands sufficient to pay nearly all the buggy company's debts,—property amounting, as reported by him August 24th, to $118,000, subject to $85,000 of debts, which reported amount accompanied a letter by Dearing, calculated to keep creditors quiet, so that their plans could be carried out, and to keep complainants from resorting to the courts to obtain their rights, and thus led complainants to believe that, if they kept quiet, they would get their pay in full. After paying over to said First National Bank a large amount of money, Dearing caused another circular to be sent out by Wolcott, agent, offering 20 per cent. for their claims, followed by a discouraging letter by Dearing, and still later by another by Wolcott, calling a meeting of creditors for February 4, 1897, to inspect affairs of company and property. Some of complainants went to said meeting, and found Dearing had no statement of what had been done by him, and said company was then alleged to be represented by Wolcott, a director of the Commercial & Savings Bank, and newly-elected president of the buggy company. It was impossible for complainants to obtain any information as to the past management of said Dearing, or what the condition of the property of the buggy company was, sufficient to enable them to judge whether it was best to accept the 20 per cent. offer. Dearing was requested to furnish a statement of what he had done under his trust, but he failed and refused to do it, and this was a part of the scheme to obtain to themselves the property of said buggy company.

(15) Instead of furnishing any such statement or information, said Dearing, on February 23, 1897, filed a bill in chancery in this court for an alleged foreclosure of what

he claims to be a mortgage on real estate and a mortgage on personal property, being the instrument which complainants claim to be an assignment as aforesaid, in which said two banks before mentioned and Blanchard and Sheldon are parties defendant, and none of the creditors embraced in said $34,000 of claims were made defendants. Said bill, among other things, prayed for appointment of a receiver over said property, and, after bill was filed, application was made to court for appointment of receiver. The defendants in said suit consenting to it, the court, on February 24, 1897, appointed one John Johnson as such receiver, he being a stockholder and one of the directors in the Commercial & Savings Bank, and a stockholder in the Elms Buggy Company. He filed a bond, signed as sureties by stockholders of the Commercial & Savings Bank and by the president and stockholders of the First National Bank. If the parties made defendants in such suit were necessary parties, then complainants were also. Said bill set forth no grounds whatever for the appointment of a receiver, and the court was imposed upon by said parties in making such appointment, and complainants believe such appointment would not have been made had the court not believed that it was desired by all persons in interest. The failure on Dearing's part to make complainants defendants in such bill, and to give them notice of application for receiver, was a part of defendants' scheme (said banks and said Dearing) to obtain the property of said buggy company through such foreclosure, and prevent complainants from getting anything out of it, and prevent them from applying for and getting a receiver who was disinterested between the parties.

(16) It would be a great sacrifice to sell the personal property coming to Dearing through said assignment at a forced sale, as it consists of unfinished vehicles and parts thereof, and twice as much could be realized from the same goods at private sale rather than by foreclosure sale; and the attempt to force said stock to said foreclosure sale by said Dearing and said banks, and this through the decree and sanction of the court, is another step in the attempt to get the property from complainants, and to apply the proceeds of such sale to other than complainants' claims; and by such scheme, if successful, said two banks will get all of said property, except such as Blanchard and Sheldon may get. Said property as heretofore manipulated by Dearing has very much depreciated in value, and much good and collectible commercial

paper is now claimed by him to be worthless; but same is not worthless, and said banks expect to get it through said foreclosure proceedings.

(17) Said Dearing and Johnson are both antagonistic to complainants, and are now managing said property in the interest of said two banks and against complainants' interest. Dearing is attempting to shield himself from his failure in carrying out his trust in a proper manner by having Johnson appointed receiver, and shifting the responsibility upon him. Johnson is only an agent and tool of Dearing and said banks, and complainants claim the right to have a receiver appointed who has no personal interest to subserve, who will take charge of the insolvent buggy company without prejudice or bias as against any one interested, and who will dispose of said property in a manner which will be for the best interests of all beneficiaries; and that Dearing should be restrained from forcing said property to a public sale, and said Dearing and Johnson should be ordered to turn over all of said property to a receiver to be appointed by this court.

(18) The prayer of the bill is:

"*First.* That the court should decree that the said instrument made by the Elms Buggy Company, and now denominated a chattel mortgage, is in fact a common-law assignment for the benefit of all the creditors of the Elms Buggy Company, and that all the creditors of said company are entitled to share proportionately in its property, and that the preferences therein mentioned are void.

"*Second.* That Henry M. Dearing be required to account to this court for his acts and doings as trustee under said instrument, and to render an account of all moneys received by him and paid out by him, stating the particulars in regard thereto; that he be required to account for and pay in all moneys received by him, and which may have been improperly paid out by him.

"*Third.* That the rights of all the creditors of said Elms Buggy Company in and to the property of said Elms Buggy Company should be adjudicated upon by said court.

"*Fourth.* That the court decree that the proceedings brought by said Henry M. Dearing for the foreclosure of the two instruments mentioned in the bill, and the appointment of defendant Johnson, were collusive as between the parties mentioned in the bill, namely, the two banks and Dearing and Johnson, and that the same were commenced without any right or authority, so far as complainants'

rights are concerned; that the court had no jurisdiction to appoint Johnson as receiver; and that the bill on which such appointment was made be made a part of the proceedings in this case so far as is necessary.

"*Fifth.* That a receiver be appointed in this suit, and Dearing and Johnson be required to turn over to such receiver all property, books, etc., of the Elms Buggy Company

"*Sixth.* Prayer for general relief."

Answers and replications were duly filed, and notice given by the various parties to take the testimony in open court. After all these proceedings, complainants made a motion for an injunction and the appointment of a receiver. Upon the hearing of this motion the court refused an injunction and the appointment of a receiver, and entered a decree dismissing the bill.

*Adelbert Culver, Boudeman & Adams,* and *Bowen, Douglas & Whiting,* for complainants.

*Herbert E. Winsor, Monfort D. Weeks,* and *Parkinson & Campbell,* for defendants.

GRANT, C. J. (*after stating the facts*). The court based its conclusion upon the finding that the mortgages or trust deeds were merely securities, and could not be construed as common-law assignments.

1. The court was in error in dismissing the complainants' bill. The cause was at issue, and ready for the introduction of proofs. The sole question for determination was whether a receiver should be appointed and a temporary injunction granted. If the instruments are held to be assignments, the complainants are not seeking to set them aside, but to have the trust enforced with the preferences declared void, so that all the creditors may share equally. This is the proper and equitable course to pursue in case of assignments with preferences. If the instruments are held to be securities, and valid, the complainants are entitled to be heard upon pleadings and proofs as to the

116 MICH.—15.

alleged violation of the trust by the assignee, Mr. Dearing. By the express terms of the mortgages—if held to be such —the complainants are interested, and entitled to call the trustee to an account. He filed a bill, which is claimed to be collusive, and did not make these complainants parties. Under either aspect of the case the court should not have dismissed the bill until after a hearing upon the proofs. It is proper to add that the answers deny all the material allegations of the bill.

2. The conveyances are between the Elms Buggy Company and Mr. Dearing as trustee. They state that they are made for the purpose " of securing the payment of all its [the buggy company's] debts to all its creditors." They cover all the property of the company, and say that said company " does sell, assign, transfer, set over, and mortgage unto said second party as such trustee," etc. They then prefer certain creditors, and, after they are paid, the avails of the residue are to be divided among the other creditors. It is not stated therein when the debts are due, but they contain the usual provisions for taking possession upon default in payments. The instrument called the " chattel mortgage " closes with these provisions:

"It is believed by said first party that it is for the benefit and advantage of the creditors for it to continue the business of manufacturing until such time as it shall have used up all its stock now on hand for the purpose of transforming the raw material into manufactured stock, and, in case some certain lines should be exhausted, that it should buy sufficient new material of any kind not on hand necessary to complete the working up of any other available for that purpose. For this reason said first party contemplates the continuance of its said business, and of selling said product for the benefit of those secured. And it is expressly understood that said first party shall keep a true and accurate and detailed account of all the expenses of so operating the business, and of all receipts, and shall render such account and statement to the said trustee, who shall have the right to examine into the said business and said work; and if, at any time, he shall believe that the continuance of said business is not for the in- -

terest of the creditors secured hereby, he shall have full power and authority to stop the operation of said factory, and take possession of the said property, if he deems it necessary, and at maturity of this mortgage dispose of the said property in accordance with the terms of this mortgage. And said party of the second part, as such trustee, is also authorized and empowered, by himself or his agent, to receive into his custody all proceeds of sale, and all remittances, and all orders for manufactured goods at all times; and for that purpose he shall have access to all correspondence and letter books of said first party to such extent as, in his judgment, is necessary for the full and complete discharge of his duties hereunder."

The bill alleges that the trustee immediately took possession, and conducted the business until he filed the bill above referred to, and that the parties by their acts construed the conveyance to be a general assignment for the benefit of creditors. It is unnecessary to now determine the character of these instruments upon their face. Fraud is charged, and we are not prepared to say that they may not be shown by proofs to in fact constitute an assignment. Upon this we express no opinion, but prefer to leave it to the final determination of the case. We can only dispose of the question now as if it were before us on demurrer.

3. Counsel for complainants strenuously urge that this court should appoint a receiver, or direct the court below to appoint one. All allegations of fraud are denied by the answers. The property is already in the hands of a receiver, who presumably has given a good and sufficient bond. Upon ascertaining the view of this court upon the law of the case, the court below will, of course, take such action as it shall deem advisable to preserve the property for the benefit of those who shall eventually be entitled to it. We think that this question should be left to the determination of that court.

The decision is reversed, with the costs of this court, and the case remanded for further proceedings.

The other Justices concurred.