## WOOD *v.* ELDREDGE.

1. FRAUDULENT CONVEYANCES — INTENT — QUESTION OF LAW OR FACT.

   Where, upon the face of an instrument its legal effect is to hinder or delay creditors, the question of fraudulent intent is a question of law and not of fact, notwithstanding the provisions of section 9536, 3 Comp. Laws.

2. SAME—EFFECT OF INSTRUMENT.

   To bring a transaction within the statute against fraudulent conveyances, it is not necessary that the transfer should actually defraud creditors, it being sufficient if it only hinder and delay them.

3. SAME—CHATTEL MORTGAGE—VALIDITY.

   A chattel mortgage conveying all its property to a trustee for the benefit of such of the mortgagor's creditors as shall, within 60 days from its date, express their willingness to accept its benefits and extend the time for payment of their debts for one year, the avowed object of which is to give the mortgagor a year in which to operate its business without annoyance from creditors, is fraudulent as to creditors not availing themselves of its benefits, its apparent purpose being to hinder and delay them.

Error to Macomb; Erskine, J.   Submitted October 17, 1906.   (Docket No. 95.)   Decided March 26, 1907.

Garnishment proceedings by Andrew C. Wood and Thomas H. Stephens, copartners as the Greenslade Oil Company, against Robert F. Eldredge as garnishee of the Macomb Sugar Company.   There was judgment for the garnishee defendant, and plaintiffs bring error.   Reversed, and judgment entered for plaintiffs.

*Graves, Hatch & Wasey,* for appellants.

*James D. May,* for appellee.

McALVAY, C. J.   In this suit defendant Robert F. Eldredge is garnishee defendant of the Macomb Sugar Company, principal defendant.   The proceedings are those ordinary under the statute of garnishment in this State, and no question is raised as to regularity.   Judgment was obtained in due course in the Macomb circuit court against the principal defendant.   The case in garnishment was tried by the court without a jury.   Plaintiffs requested the court to make certain findings of fact and of law which were submitted in writing.   Findings of fact and findings of law were made and filed by the court.   The findings of fact were not excepted to.   Exceptions were taken to the findings of law, and also to the refusal of the court to make the specific findings of law as requested.   Judgment was entered upon these findings against plaintiffs.   A complete statement of the facts of the case is contained in the findings of the court.   The findings of fact and findings of law are as follows:

## "FINDINGS OF FACT.

"The Macomb Sugar Company, the principal defendant, was on May 30, 1903, indebted to the plaintiffs in this cause in a sum of money, all of which was then due and payable, and for which indebtedness judgment was rendered by this court in the above-entitled cause upon August 28, 1905, in favor of the plaintiffs and against the

principal defendant in the sum of $396.19, including costs.

"After deducting a payment on this judgment on January 16, 1906, there was due on January 30, 1906, the date of the trial, the sum of $214.12.

"On May 30, 1905, the Macomb Sugar Company, the principal defendant, executed and delivered to Robert F. Eldredge, the garnishee defendant, as trustee, a chattel mortgage, covering substantially all of its personal property of every kind and nature, except small portions either previously disposed of by mortgage, or which were sold to it under contracts of conditional sale by the terms of which it had not as yet received the title, a copy of which mortgage is hereto attached.

"More than 50 per cent. of the creditors did accept the mortgage within the 60 days therein provided, but plaintiffs, who were creditors named in the list of creditors attached to the mortgage, although having due notice, have not accepted the benefits of the mortgage.

"The Macomb Sugar Company, by its board of directors, on February 19, 1904, passed the following resolution:

"'Resolved, that the title to the personal property described in the chattel mortgage given by this company to Robert F. Eldredge May 30th, 1903, for the benefit of the general creditors of this company who extended the time for paying their indebtedness, except the 5,767 shares of stock of this company not issued, be and is hereby placed in and transferred to said Eldredge as trustee for the same purposes for which he was named in said chattel mortgage; and he is hereby authorized without foreclosure proceedings to dispose of said personalty and the stock, if any, for which he may exchange the bonds in said chattel mortgage named, in such manner as he may deem best for the interest of those interested in the proceeds thereof, the purpose hereof being to avoid the expense and delay of foreclosure proceedings.'

"At the time the resolution of February 19, 1904, was passed, Robert F. Eldredge, trustee, was in possession of some of the property covered by the chattel mortgage and the resolution, and he subsequently took possession of the remainder by virtue of said chattel mortgage and resolution.

"Robert F. Eldredge, the trustee, has since February 19, 1904, converted all but a small portion of the property so taken by him into money, and has paid to the creditors

who accepted the benefit of the mortgage within the 60-day period a dividend of 45 per cent. of their claims; but has paid nothing to plaintiffs.

" At the time of the service upon him of the writ of garnishment in this cause, Robert F. Eldredge had, besides certain unsold property, more than sufficient money in his hands and under his custody and control, which money was the proceeds of the mortgaged property, to pay plaintiffs' judgment in this case, with interest and costs; but did not have sufficient to pay the creditors in full who accepted the provisions of said mortgage.

" The chattel mortgage was never foreclosed.

" The Macomb Sugar Company is a corporation organized and existing under the laws of Michigan, and upon February 19, 1904, had its principal office for the conduct of its business in Macomb county, Mich., and substantially all of the property covered by said resolution was located in said county.

" There was never filed in the office of the county clerk of Macomb county, Mich., a duplicate or copy of the resolution of February 19, 1904, or an inventory of the property or a list of the creditors, or a bond by Robert F. Eldredge, for the faithful performance of the trust, as provided in section 9539 of volume 3 of the Compiled Laws of Michigan for the year 1897.

" The chattel mortgage made by the Macomb Sugar Company to Robert F. Eldredge, trustee, upon May 30, 1903, was not made with the intent to hinder or delay the creditors of said company, unless such construction is necessarily drawn from the face of the instrument.

## " FINDINGS OF LAW.

"A preliminary question, arising on a motion made by the garnishee defendant, to have the proceedings dismissed, for the reason that the statutory issue was not brought on for trial at the same term of court at which judgment was rendered against the principal defendant, was taken under advisement at the time of the trial. This motion is denied.

" Upon the merits of the case substantially two questions are involved: *First.* Was the chattel mortgage executed with intent to hinder, delay, and defraud creditors? *Second.* Did the resolution in question operate as a general assignment for the benefit of creditors?

" The mortgage contained a clause requiring creditors

who desired to avail themselves of its provisions to file a written acceptance to that effect within 60 days of receipt of notice. It also extended the time of payment of the several claims secured thereby until May 1, 1904. It is argued that these provisions made the instrument void as to creditors under 3 Comp. Laws, § 9533.

"It is permissible in this State for an insolvent debtor to give a chattel mortgage to his creditors, and therein postpone the time of payment of the claims secured thereby. A creditor for whose benefit such mortgage is executed may or may not accept the instrument. If he does not, he is at liberty to pursue his appropriate legal remedy to collect his claims; but, unless he does accept the mortgage, either expressly or by implication, he may not derive any benefit therefrom.

"The provision requiring an express acceptance does not place an undue burden upon the creditor. In *Beckman* v. *Noble*, 115 Mich. 523, a chattel mortgage which required certain creditors therein named to extend the time of payment of their claims, and to expressly assent thereto, was sustained.

"*Dearing* v. *Hardware Co.*, 165 N. Y. 78, affirming 33 App. Div. 31, is relied upon by plaintiffs. There a similar clause in a Michigan mortgage was held invalid as to New York creditors attaching chattels of the defendant in that State.

"It is urged that our statute is borrowed from New York, and that the decisions of that State construing such statute are entitled to great weight. It is true that the statutes are substantially the same; but it also true that the courts of the respective States are not in harmony on the construction of this statute. In the *Dearing Case* the court in the appellate division said, in part:

"'Assuming, then, that the instrument in question is in conflict with the laws of this State, we are brought to the consideration of another and perhaps still more important question, which is whether this fact permits us to treat it as void, in view of the further fact that it appears to be valid under the laws of the State where it was executed.'

"My conclusion is that the chattel mortgage in question is valid. Whether the resolution of February 19, 1904, standing alone, would be void under 3 Comp. Laws, § 9539, it is not necessary to decide, inasmuch as it does not appear that defendant's possession depended upon said

resolution, and that the object of such resolution was to avoid the expense and delay of foreclosure. See *Austin* v. *First Nat. Bank of Kalamazoo*, 100 Mich. 613; *Daggett, Bassett & Hills Co.* v. *McClintock*, 56 Mich. 51; *Brown* v. *Mynard*, 107 Mich. 401, 403.

"Defendant is therefore entitled to judgment.

[Signed]      "BYRON R. ERSKINE,
      "Circuit Judge.

"May 14, 1906."

The following is the chattel mortgage referred to:

"This indenture, made this thirtieth day of May, 1903, by and between the Macomb Sugar Company, a corporation duly organized under the laws of the State of Michigan, party of the first part, and Robert F. Eldredge, as trustee of the city of Mt. Clemens, Macomb county, Michigan, party of the second part, *witnesseth:*

"That said first party, for and in consideration of one dollar ($1.00) and other good and valuable considerations to it in hand paid, does hereby grant, bargain, sell and mortgage to said second party all the following goods, chattels and personal property, all the tools, cultivators, beet knives, and forks, hoes, harrows and other agricultural tools, machines and implements owned and used by said first party situate in the township of Harrison, said county and State, or elsewhere; also all sugars and syrups owned by said first party situate in its factory and storehouse in said township of Harrison; also ten bonds of said first party bearing date March 1st, 1902, and being bonds numbered 1 to 10 inclusive of the issue of said company secured by a trustee mortgage given to the Union Trust Company of Detroit; also all the shares of the capital stock of said Macomb Sugar Company not yet issued, being about 5,767 shares out of a total of 30,000 shares and being of a par value of $57,670.00. It being hereby intended to describe, convey and mortgage all of the personal property owned by said first party not covered by that certain trust mortgage before mentioned given to the Union Trust Company as trustee of whatever kind or nature the same may be (save and except whatever beet seed the said first party may have on hand at its factory and storehouse, office, or elsewhere, which said beet seed was purchased by said first party from Otto Hoerning and on which seed said Hoerning has a lien for the purchase price thereof). It being understood that said personal property is subject to certain liens thereunder as hereinafter described.

"That said first party also assigns, transfers, and sets over to said second party as trustee for the purposes hereinafter specified all the rents by it to be received from the Sugar Company, Limited, a partnership association, under and by virtue of the provision of a certain lease made between said first party and said partnership association bearing date May 30th, 1903, which said lease is hereinafter more particularly specified, save and except those rents which by the terms of said lease are to be payable to said first party in trust solely for the payment of certain interest accruing on debts secured by said trust mortgage and to the Kilby Manufacturing Company, the contractors building the plant of said first party who holds the mechanic's lien thereon; said rental excepted from this mortgage being the portion fixed in section *b* of subdivision 3 of said lease.

" Whereas, the said party of the first part at the close of its first year's campaign operating its sugar factory and plant, has found itself largely indebted and not in a position to care for its indebtedness as the same came due, and owes a large sum of money to the Kilby Manufacturing Company, of Cleveland, Ohio, the contractors constructing its said factory, who have filed a claim of lien under the statutes of the State of Michigan upon the plant of said first party.

"And whereas, the said first party has heretofore issued its bonds to the amount of $300,000.00 (three hundred thousand dollars), and secured the payment of the principal and interest thereon by a mortgage to the Union Trust Company of Detroit, Michigan, as trustee, which said mortgage covers all its real estate and certain portions of its personal property, references to which said mortgage, or record, is hereby made for certainty.

" And whereas, it is apparent that the most feasible, speedy and certain way for clearing up the present financial difficulties of the said first party, lies in the successful operation of said plant during the campaign of 1903–04, and the said Kilby Manufacturing Company and some of the owners of the bonds secured by said trust mortgage are willing that an opportunity be given to said first party to so operate said plant.

" And whereas, the said bonds numbered 1 to 10 above mentioned, have been heretofore pledged with Robert F. Eldredge, to secure the payment of certain indebtedness of the said Macomb Sugar Company incurred for the pur-

pose of raising funds to provide for the payment of beets received at the factory in the campaign of 1902–03,. of labor employed by said Macomb Sugar Company, and of interest on the bonds of said company secured by said real estate mortgage on its plant, portions of which said indebtedness are also secured by a bill of sale of the said sugars and syrups to said Eldredge, dated January 15th, 1903, of record in the office of the town clerk of said Harrison.

" And whereas, the beet seed now owned by said first party was purchased by it of the said Hoerning for the campaign of 1903–04, the amount of the purchase price of which is not included in the indebtedness to the said Hoerning included in Schedule A hereto attached.

" And whereas, said first party purchased from John R. Snook, the barrels for use during the campaign of 1903–04, and did in January, 1903, secure said Snook for the amount due him for said barrels so furnished by him, by a chattel mortgage covering said sugars and syrups and said agricultural implements, which said chattel mortgage is of record in the office of the town clerk of the township of Harrison, said county and State, reference being made thereto for more certainty.

" And whereas, said first party is further indebted to various parties on claims which remain unsecured, a list of which is hereto annexed and marked 'Exhibit A,' and now desires to provide as ample security to said creditors as is feasible in consideration of their delaying all attempts to enforce the collection of said claims until it, said first party, can secure the benefit of the operation of said plant during the campaign of 1903–04.

"And whereas, the said first party has leased its said plant and factory to the Sugar Company, Limited, a partnership association, by written agreement which provides that the said partnership association shall pay the taxes upon said plant and property for the year 1903 and shall operate the said factory, and after the repayment to itself, said partnership association, of the expenses of such operation, taxes and of the proper laying by of the factory of said first party, shall pay the proceeds of said campaign, not exceeding twenty-eight thousand dollars ($28,000.00) to the said first party in trust solely for the payment of the past due interest on the bonds of said first party and of the interest then due upon the claim of the Kilby Manufacturing Company against said first party, and further

147 MICH.—36.

shall pay to said first party one-half of the balance of the proceeds of said campaign over and above the payments above mentioned:

"Now, therefore, this mortgage is given to said second party and to his assigns, selected by him, and those entitled to the benefits hereof, as trustee for the benefit of the creditors of said first party specified in Schedule A hereto attached, who shall by writing addressed to said first party or to the said trustee, express, within sixty days from the date hereof, their willingness to accept the benefits of this mortgage and to extend the time of payment of their several debts due them from said Macomb Sugar Company to May 1st, 1904, and is given upon the express condition that if the said first party shall pay or cause to be paid the several debts due or to become due to such of said parties named in Schedule A hereto annexed as shall accept benefits hereof, with interest on or before said first day of May, 1904, then these presents and any notes for said indebtedness which said first party has given or may hereafter give to any of said creditors mentioned in Schedule A shall cease and become null and void: *Provided* that the owners of fifty per cent. (50%) of said indebtedness shall accept the benefits hereof; it being understood that unless such proportion of said creditors shall so accept, this instrument shall be of no force or effect.

"It is further agreed by and between the parties hereto that in case default be made by said first party in the payment of such of said indebtedness specified and secured hereby as shall become entitled to the benefits hereof by extension of the time of payment as herein provided, on or before the said first day of May, 1904, it shall and may be lawful for said second party, and he is hereby empowered and authorized as a part of this security to enter into any place where said mortgaged property may be situate and to take possession thereof and to sell the same at public auction, after the like notice as is required by law for constable sales, the said goods, chattels and personal property or so much thereof as may be necessary to satisfy the debt, entitled to the benefit of this mortgage, the interest thereon and his reasonable expenses in the premises, and to retain the same out of the proceeds of such sale and moneys received by him from the said partnership association for such rents, the overplus and residue, if any, to belong to and be returned to said first party.

"And whereas, the amounts of said indebtedness to the

parties named in Schedule A are therein given according to the best present knowledge of said first party, it is understood and agreed that this mortgage is given to secure said creditors (who are intended to include all of the creditors of said first party other than the holders of said bonds secured by said trust mortgage and the said Kilby Manufacturing Co., and the officers of said company for salaries due them, said bondholders, Kilby Manufacturing Company and officers not being entitled to the benefit hereof) who shall by the extension of the time become entitled to the benefit hereof in proportion to the amounts of their claims against said first party respectively, and that all the proceeds realized by said second party under and by virtue of this instrument, after the payment of his expenses and compensation in carrying out this instrument, shall be distributed among the creditors who shall accept the benefit hereof in accordance with the terms hereof in proportion to the amounts actually due or to become due to said parties by reason of transactions heretofore had between said first party and them respectively, portions of said debts being now represented by notes not yet matured.

"In witness whereof the said party of the first part has caused this instrument to be executed by its president and secretary in its behalf the day and year first above written.

"MACOMB SUGAR COMPANY,
"By MATTHEW SLUSH, President.
"FRANK E. NELLIS, Secretary."

The assignments of error raise two important questions:

1. Was this chattel mortgage voidable as to plaintiffs, under section 9533, 3 Comp. Laws? We quote the portion of the section which is claimed to apply to this case:

"Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or goods or things in action, or of any rents or profits issuing therefrom, and any charge upon lands, goods or things in action, or upon the rents or profits thereof, made with the intent to hinder, delay or defraud creditors  *  *  *  of their lawful suits *  *  *  debts or demands  *  *  *  against the persons so hindered, delayed or defrauded, shall be void."

The question of the fraudulent intent in cases arising under this statute is by a later section declared to be

deemed a question of fact, and not of law. Section 9536, 3 Comp. Laws. The question of fraudulent intent under this statute has been several times passed upon by this court. In the case of *Oliver* v. *Eaton*, 7 Mich. 112, Justice CAMPBELL, speaking for the court, said:

"The law where an instrument contains illegal provisions, and such as are not reconcilable, on any possible hypothesis, with an honest or legal intent, declares it void upon its face, because no evidence could change its character. The cases in which this absolute and unchangeable presumption arises are not numerous. There are other cases in which, upon the face of the instrument, a statutory presumption arises which is only prima facie evidence of fraud. There are still more cases in which the whole illegality charged must be made out by extrinsic evidence. In both of the classes last named, the jury must determine all the facts."

In *Bagg* v. *Jerome*, 7 Mich. 157, Justice MANNING, speaking for the court, said:

"When the instrument, on its face, is one the law will not sanction against creditors, it is the duty of the court to pronounce it fraudulent as to them; but the court cannot look dehors the instrument for that purpose."

If, then, upon the face of this instrument, we find that its legal effect was to hinder or delay creditors, the question of fraudulent intent is a question of law, and not a question of fact. To bring the transaction within the prohibition of the statute, it is not necessary that the transfer should actually defraud creditors. It is sufficient if it only hinder and delay them. *McBryan* v. *Trowbridge*, 125 Mich. 549, quoting 14 Am. & Eng. Enc. Law (2d Ed.), pp. 244, 245.

It will be necessary to call attention only to those provisions of the chattel mortgage which have a material bearing upon the proposition under consideration. The property covered by the mortgage was found by the court to be substantially all the property then owned by the mortgagor. It recites that the mortgagor "has found itself largely indebted and not in a position to care for its

indebtedness as the same came due;" that the constructing contractors have filed liens upon its plant; that for bonds issued to the amount of $300,000 a trust mortgage to secure principal and interest has been given upon the entire real estate and some of the personal property; "that the most feasible, speedy and certain way for clearing up the present financial difficulties lies in the successful operation of said plant during the campaign of 1903–04," and that the lienors and trust mortgagee are willing that such opportunity be given; that certain securities have theretofore been given Eldredge and other creditors for certain described indebtedness; that it is indebted to various other parties for whom it desires to provide as ample security as is feasible "in consideration of their delaying all attempts to enforce the collection of said claims until it can secure the benefit of the operation of said plant during the campaign of 1903–04." These unsecured creditors are given 60 days in which to accept the offered security and extend the time of payment of their several debts to May 1, 1904. When creditors representing 50 per cent. of said indebtedness accept, the instrument becomes operative. The instrument recites that it is given for the benefit of those only who accepted within 60 days and gave the extension required, and upon the express condition that if the maker paid such creditors on or before the time limited, it was to cease and be null and void, and, in default thereof, the trustee was authorized to foreclose and make sale of the property to satisfy the creditors who accepted, and pay the surplus, if any, to the mortgagor. Creditors representing more than 50 cent. of this indebtedness accepted the proposition. The court found that there was not enough property to pay in full the creditors who accepted. Plaintiffs did not accept. Their claim against the principal defendant was due when the mortgage was made. It is conceded that in this State an insolvent debtor may prefer one or more of his creditors by mortgage security, and, if security of such favored creditors is the object, it is immaterial whether the effect of giving such security is

to prevent other creditors from realizing on their claims.
It is contended, however, by plaintiffs that the object of
this mortgage was to coerce all creditors into giving an ex-
tension of one year upon their claims, and the real pur--
pose was to hinder and delay creditors, and not to prefer
certain creditors by security.

From the findings of law of the trial court it appears
that he considered that in the case of *Beckman* v. *Noble*,
115 Mich. 523, an instrument containing provisions sim-
ilar to the one in the case at bar was construed by this
court and held valid, and that decision controlled this
case. An examination of the original records in the
*Beckman Case* shows that the instrument was a chattel
mortgage given to secure three creditors. Two of these
creditors were required to extend the time of payment on
each of their notes 40 days before the instrument became
operative. Unsecured creditors, from whom no delay
was asked, claimed that the two secured creditors had not
granted the extension. The court found as a matter of
fact that they had complied with that condition. The
mortgage was held to be valid. The question we are
now considering was not involved in the *Beckman Case*,
and is for the first time before the court.

We are referred in both briefs to *Dearing* v. *Hard-
ware Co.*, 165 N. Y. 78, which is claimed as authority
both in favor of and against the validity of this instru-
ment. Although the New York court stated that the in-
strument before it was executed in Michigan was a trust
mortgage upon chattels according to the law of this State,
because the transfer was not absolute, but conditional,
and passed neither title nor right to possession until after
breach of condition, it declined to express an opinion upon
the question as to whether the coercive clause was estab-
lished as valid by the law of this State. This court never
passed upon the instrument in question. It was before
the court in *Albion Malleable Iron Co.* v. *First Nat.
Bank of Albion*, 116 Mich. 218. In the opinion Chief
Justice GRANT, for the court, said:

"It is unnecessary to now determine the character of these instruments upon their face. Fraud is charged, and we are not prepared to say that they may be shown by proofs to constitute an assignment. Upon this we express no opinion, but prefer to leave it to the final determination of the case."

The instrument differed somewhat from the one in the case at bar, but the provisions of the so-called coercive clause were quite similar. While the courts of the State of New York (from which State we have borrowed the statute invoked in this case) have construed certain instruments as coming within its prohibition which our courts have held to be valid trust mortgages, yet what the court of appeals of that State said in the *Dearing Case*, supra, in construing the coercive clause, which has never been construed by this court, is persuasive authority. The New York court says:

"The coercive clause of the mortgage in question required all creditors, before they could take any benefit therefrom, to come in under it and accept its terms, and, if their debts became due before the mortgage, to so extend the time of payment that they could not be enforced until after the mortgage matured. It not only withdrew from the trustee the power of paying any creditor who did not comply with these conditions, but also provided that after he had paid the creditors 'in full who accept of this security and assent thereto' he was to pay the surplus to the mortgagor. The instrument was to 'only operate in favor of those' so assenting, and the direction to pay was limited in the same manner. * * * Thus no creditor could derive any benefit from the mortgage unless he agreed to waive the remedies provided by law for the collection of debts, and, if he refused to so agree, all the property of the mortgagor was placed beyond his reach for an indefinite period. If his debt was due and he brought suit within the 90 days, he was shut out from participation in the assets. If the mortgagor failed to include him in the schedule of creditors, which, although it was to be furnished him at some undefined time after the execution of the mortgage, was, when furnished, to become a part of the instrument; or understated the amount of his claim; or it was disputed by some other creditor or

by the trustee, he could not establish it 'by lawful suit,' as provided by law, without running the risk of serious loss. He might wait until the 90-day period had expired, or even until his demand had outlawed, and then find that he was not on the list.     *     *     *

"The claim of the attaching creditor became due about 45 days before the mortgage, which was to run for 90 days. That creditor did not see fit to accept the privilege afforded by the mortgage upon the conditions imposed, and the necessary effect upon it and others similarly situated was that all the assets of the insolvent debtor would be converted into money and paid over to such creditors only as accepted the terms exacted, and whatever remained would be restored to the mortgagor. The hindrance and delay thus caused is precisely what the statute relating to fraudulent conveyances aims to prevent. A more adroit and dangerous method of evading that statute and violating its provisions has seldom been devised. An insolvent corporation, under the protection of this ingenious instrument, is permitted to keep possession of all its property, to continue its business, to buy, manufacture, and sell 'in the usual course of trade,' which admits of sales on credit, and the creditors, whether preferred or unpreferred, unless they are willing to let this condition of affairs continue for 90 days, and tie their own hands by an extension of time for the payment of their debts, must lose all benefit from the mortgage and every chance of having their debt paid out of the assets of the mortgagor until a surplus, after paying all assenting creditors, should come back into its possession. There was not even a promise by the mortgagor to pay the proceeds of sales to the trustee, although the latter was 'authorized and empowered to receive' them. Thus the mortgagor could keep its creditors at bay for 90 days, and continue in the possession and use of its property during that period. The inevitable result would be to hinder and delay creditors in violation of law.

"The mortgage was void upon its face on account of the coercive provisions it contained."

We think the reasoning of the foregoing opinion is conclusive. The terms of the instrument in the case at bar present a more extreme case than that construed by the New York court. The time of extension required was one year; the schedule of creditors is by its terms incom-

plete, and no provision is made for giving notice to any creditor. The avowed object of the scheme was to give the Macomb Sugar Company a year in which to operate its business without annoyance from creditors. It retained absolute control of all its receipts without any obligation to pay any creditor during the time of extension. It is obvious that the purpose and effect of this instrument was to hinder and delay creditors. The instrument on its face is one the law will not sanction against creditors. " Therefore it is the duty of the court to pronounce it fraudulent and void as to them." It comes within the first class of cases described by Justice CAMPBELL in *Oliver* v. *Eaton,* supra.

The question of the good or bad motives of the mortgagor is immaterial. We hold the instrument upon its face to be prejudicial to the rights of creditors. A party is presumed to intend the natural and necessary consequences of his own acts, and, when prejudice to the rights of creditors results, the act is constructively fraudulent, notwithstanding good motives or intentions. *Schaible* v. *Ardner,* 98 Mich. 72, and cases cited.

2. The second contention of plaintiffs is that the resolution of the Macomb Sugar Company, made February 19, 1904, amounted to a general assignment for the benefit of creditors, and was voidable as to plaintiffs because no proceedings were taken under it, as required by the statute governing such assignments. This resolution is set forth in the findings of fact. By it the title to the property is placed in and transferred to the trustee, leaving no interest or equity in the company. It is stated to be for the benefit of the general creditors who extended the time for paying their indebtedness, and for the purpose of avoiding a foreclosure.

It is not necessary to determine what as a matter of law was the effect of this resolution. No claim has been made under it by the garnishee defendant, except that it gave possession of the property and made a foreclosure of the mortgage unnecessary. It could not operate to change

the terms of this chattel mortgage, which we have determined as a matter of law was intended to hinder and delay creditors and was void as against them. The court found that at the time of the service of the writ of garnishment upon him defendant Eldredge had in his hands and under his control besides certain unsold property more than sufficient money to pay plaintiffs' judgment against the principal defendant. This property was subject to garnishment in this case, and plaintiffs were entitled to a judgment for the amount of their claim remaining unpaid. The court was in error in not entering such a judgment in their behalf.

Inasmuch as no question of fact is involved, a judgment will be entered in this court in favor of plaintiffs and against the garnishee defendant, in accordance with this opinion, for the amount remaining unpaid upon their judgment and costs against the principal defendant, together with costs in this case of both courts to be taxed.

CARPENTER, GRANT, BLAIR, and MOORE, JJ., concurred.